UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | )   No. 4:21 CR 250 MTS |
| BRIAN GANSEREIT, | ) ) ) |
| Defendant. | ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Brian Gansereit, represented by defense counsel Kevin Curran, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 2 and 3 of the Indictment, the government agrees to dismiss Count 1 and also agrees that no further federal prosecution will be brought in this District relative to the defendant's false statements in connection with making a loan to United States Department of Agriculture, Farm Service Agency (FSA) and converting to his own use

1

property pledged as collateral to FSA from March 2018 through January 2019, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

### 3. ELEMENTS:

The defendant admits to knowingly violating Title 18, United States Code, Section 658, and admits there is a factual basis for the plea and further fully understands that the elements of the crimes are:

### COUNTS 2 and 3
### (Property Mortgaged or Pledged to Farm Credit Agency)

*One*, the defendant knowingly;

*Two*, converted to defendant's own use property that was pledged as collateral to the FSA; and

*Three*, the defendant did so with the intent to defraud.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

The Secretary of Agriculture acting through the Farm Service Agency ("FSA") (a successor agency of the Farmers Home Administration) provides loans for family-sized farmers and ranchers to start or continue farming or ranching. These loans are managed by the FSA, which is responsible for approving, collecting, servicing, and liquidating loans made by the Secretary of Agriculture.

FSA borrowers have to complete and sign an "Agreement for the Use of Proceeds and Security." The agreement stated, among other things, that FSA has a security interest in all property (referred to as collateral) described in the Security Agreement(s), in addition to any after acquired property. This agreement also requires that the proceeds from the sale of security, such as livestock, must always be used to pay expenses and loan payments, that both FSA and the borrower's name must appear as the payees on all checks received, that the borrower is required to keep a record of collateral disposed of, and that the borrower may sell collateral to purchasers not specifically listed in the agreement, although the borrower is required to immediately notify the FSA of the sale and provide the purchaser's name and address.

FSA borrowers have to complete and sign a "Security Agreement." The security agreement created a blanket lien on all proceeds, products, and security acquired, including crops, farm equipment, other equipment, inventory, and livestock owned at the time of the loan or acquired during the life of the loan. Among other items, the borrower agrees that he is the

3

absolute owner of the collateral, that statements contained in the loan application and related loan documents are true and correct, that prompt payment will be made when due, financing statements describing the collateral can be filed by the FSA, and that the borrower will immediately notify the FSA of any material change in the collateral. In addition, the agreement states that the disposal of property without the consent of the FSA, or making any false statements, may constitute a violation of federal criminal law.

Once an FSA loan is made, the FSA issues lien notifications to banks, sale barns, implement dealers, and other similar entities in or around the county in which the FSA borrower operates. These lien notifications are intended to notify these entities that the FSA has a collateral interest in the assets of the borrower. In this way, the FSA seeks to ensure that pledged assets are not sold without the FSA's knowledge and that the FSA receives proceeds from the sale of assets pledged as collateral for FSA loans.

On December 6, 2017, while living in Leslie, Missouri, defendant Gansereit applied for two FSA loans: an operating loan and a direct loan to assist him in starting his own farm. These loans were denied by FSA because Gansereit had no external income and proposed making payments on the loans strictly from the farm's income. FSA so informed Gansereit on January 4, 2018.

On March 5, 2018, defendant made new applications to FSA, essentially the same as before, however added external employment at ITS ConGlobal. Based on this representation, FSA approved defendant for an operating loan of $64,000 and a direct loan of approximately $160,000.

On April 16, 2018, defendant signed a security agreement with FSA in which he acknowledged that selling livestock pledged as collateral on these loans would be a criminal law

4

violation. Defendant also signed an agreement on use of proceeds which made FSA the payee on the sale of any collateral livestock.

However, despite these agreements and knowing of the criminal consequences, defendant sold goats valuing in excess of $1,000 pledged as collateral to FSA without the permission or consent of FSA. These sales were made on July 26, 2018 and January 17, 2019 to Midwest Exchange Regional Stockyards, located in Mexico, Missouri, within the Eastern District of Missouri, in the amounts of $1,256.96 and $10,249.25 respectively. Rather than sending these proceeds to FSA, defendant converted them to his own personal use by depositing the monies into a personal bank account. Defendant did so with the intent to defraud FSA.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty for Counts 2 and 3 is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 6, as found in Section 2B1.1(a)(2).

5

(2) **Specific Offense Characteristics:** The parties agree that 10 levels should be added pursuant to Section 2B1.1(b)(1)(F) as the loss exceeded $150,000 but was less than $250,000.

b. **Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility. Further, the Government, under the facts known at present, will make a motion at the time of sentencing for an extra 1 level reduction based on the defendant's timely notification of his intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may decide not to file a motion for the extra 1 level reduction and may present evidence to the court, and argue that the defendant should not receive all or part of the 2 level deduction pursuant to Section 3E1.1(a), without violating the plea agreement.

c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 13.

d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

6

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

7

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

### 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of

the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. ~~The defendant specifically agrees to pay $1,709.46 in restitution.~~ [strike MTS]

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine

9

adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the

10

defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

9/30/22
Date

JOHN J. WARE
Assistant United States Attorney

9.29.22
Date

BRIAN GANSEREIT
Defendant

9.30.22
Date

KEVIN CURRAN
Attorney for Defendant

11